IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| **GLEN EARL CLAIBORNE,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO.** **1:18-CV-5542-SDG-CCB** |
| **JPMORGAN CHASE BANK, N.A.,** | |
| **Defendant.** | |

## ORDER AND FINAL REPORT AND RECOMMENDATION

This matter is before the Court for consideration of a number of motions: Plaintiff's second motion for summary judgment, (Doc. 236); Plaintiff's motion for extension of time for Defendant to respond to his second motion for summary judgment, (Doc. 244); Plaintiff's motion for leave for Defendant to respond to his second motion for summary judgment, (Doc. 245); Plaintiff's emergency motion for extension of time to file dispositive motions, (Doc. 263); Plaintiff's third motion for summary judgment, (Doc. 264); Plaintiff's motion for mailbox rule, (Doc. 266); Defendant's motion for summary judgment, (Doc. 269); Plaintiff's motion to disqualify Defendant's counsel, (Doc. 274); Plaintiff's motion to ban Defendant's debt collection attorney and debt collection agency, (Doc. 275); Plaintiff's motion

for an order to show cause, (Doc. 282); Plaintiff's motions for unopposed motions,

(Docs. 283, 295); Plaintiff's motions for sanctions, (Docs. 290, 291); and Plaintiff's

motion to strike Defendant, (Doc. 298).

For the reasons that follow, the undersigned **RECOMMENDS** that

Plaintiff's motions for summary judgment, (Docs. 236, 264), be **DENIED**, and that

Defendant's motion for summary judgment, (Doc. 269), be **GRANTED**.

The undersigned also **DENIES AS MOOT** Plaintiff's motion for extension

of time, (Doc. 244), and his motion for leave for Defendant to respond, (Doc. 245).

The undersigned **DENIES IN PART AND DENIES AS MOOT IN PART**

Plaintiff's emergency motion for extension of time, (Doc. 263), and his motion for

mailbox rule, (Doc. 266). The undersigned **DENIES** Plaintiff's motions to

disqualify and ban Defendant's counsel, (Docs. 274, 275); his motion for an order

to show cause, (Doc. 282); his motions for unopposed motions, (Docs. 283, 295);

his motions for sanctions, (Docs. 290, 291); and his motion to strike Defendant,

(Doc. 298).

## I.   PROCEDURAL BACKGROUND

As noted in previous Reports and Recommendations (R&R), the procedural

history of this case is long and convoluted, and it is not necessary to recount it all

here. Instead, the Court recaps that which is particularly relevant to the matters at

2

hand. On April 15, 2020, Plaintiff filed an amended complaint. (Doc. 84). Defendant did not file an answer or otherwise respond to the amended complaint within 21 days, and the Clerk entered default against Defendant on May 15, 2020. On May 22, 2020, Defendant filed a motion to set aside default and attached an answer and motion to dismiss, which Defendant asked to be filed if the motion to set aside the default was granted. (Doc. 91). On January 22, 2021, the undersigned issued an order and R&R that, among other things, granted Defendant's motion to set aside default. (Doc. 124). The undersigned further directed the Clerk to enter Defendant's answer and motion to dismiss that were attached to Defendant's motion to set aside the default, (Docs. 91-3, 91-4). (Doc. 124 at 23). The Clerk entered Defendant's answer and motion to dismiss the same day that the order and R&R were filed. (Docs. 126, 127).

On March 12, 2021, the District Judge adopted the R&R. (Doc. 140). On August 13, 2021, after Plaintiff responded to Defendant's motion to dismiss, (Doc. 127), the undersigned recommended that the motion be granted in part and denied in part, specifically recommending that Plaintiff's claim for attempted wrongful foreclosure be permitted to proceed and that all other claims be dismissed, (Doc. 171 at 27). On September 20, 2021, the District Judge adopted this R&R. (Doc. 177). Plaintiff also filed his first motion for summary judgment, (Doc. 166), on July 16,

2021. On January 3, 2022, the Court issued an R&R recommending that Plaintiff's first motion for summary judgment be denied because Plaintiff failed to include a statement of material facts with the motion. (Doc. 202 at 4–9). On March 24, 2022, the District Judge adopted the R&R. (Doc. 254).

Plaintiff filed a second motion for summary judgment, which is currently pending before the Court, on February 24, 2022. (Doc. 236). On April 14, 2022, after ruling on two motions for mediation, the Court set a dispositive motions deadline of May 5, 2022. (Doc. 259). The Court later extended that deadline by 21 days, on motion by Defendant, until May 26, 2022. (Doc. 262). Plaintiff filed a third motion for summary judgment on May 9, 2022, (Doc. 264), and Defendant filed a motion for summary judgment on May 26, 2022, (Doc. 269), both of which are currently pending before the Court.

## II. PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AND RELATED MOTIONS

Plaintiff has two motions for summary judgment pending before the Court. (Docs. 236, 264). The Court finds that both are due to be **DENIED** for the same general reason: that Plaintiff failed to support each fact by a citation to evidence.

The Local Rules require that:

[a] movant for summary judgment shall include with the motion and brief a separate, concise, numbered statement of the material facts to

which the movant contends there is no genuine issue to be tried. Each material fact must be numbered separately and supported by a citation to evidence proving such fact. The Court will not consider any fact: (a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts.

LR 56.1(B)(1), NDGa. The requirements of Local Rule 56.1(B)(1) make sense, and enforcing the rule is not a "form over substance" exercise. It provides an orderly way for the parties to present and respond to the facts. Specifically, it "protects judicial resources by making the parties organize the evidence rather than leaving the burden upon the district judge," and it "streamlines the resolution of summary judgment motions by focusing the district court's attention on what is, and what is not, genuinely controverted." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (internal quotation marks and alterations omitted).

Unlike his first motion for summary judgment, Plaintiff has included a separate, numbered statement of material facts with his second and third motions for summary judgment. (*Compare* Docs. 236-4 and 264 at 5–11, *with* Docs. 165, 166; *see also* Doc. 202 at 4, (R&R on Plaintiff's first motion for summary judgment noting that Plaintiff filed only an affidavit with an attachment including a number of documents and that any facts therein were not incorporated into any statement of

5

material facts, and also noting that it was not sufficient that Plaintiff incorporated in his brief some numbered facts citing to exhibits)). However, Plaintiff has failed to support his facts with citations to evidence, and he has also stated many of his facts as issues or legal conclusions.

In his second motion for summary judgment, (Doc. 236), Plaintiff includes a separate statement of 143 material facts; however he does not cite to any evidence in support of any single one of these facts. (Doc. 236-4 at 1–20).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Here, Plaintiff cites to various motions, briefs, and orders (mostly to note procedural history), (Doc. 236-4 at ¶¶ 37–38 (citing to Doc. 127), ¶¶ 63–64, 70 (citing to Doc. 225), ¶ 66 (citing to Doc. 177)), as well as to a case, *id.* at ¶ 39, but not to evidence. Further, many of the facts he includes merely assert legal conclusions, *see, e.g., id.* at ¶ 3, 6, 20, 83, while others are immaterial, *see, e.g., id.* at 28–30. Plaintiff does include a section in his summary-judgment brief entitled "Exhibits and Evidence in Support of Summary Judgment," in which he cites to

6

various exhibits in support of nine numbered facts. (Doc. 236-5 at 17–19). However, these numbered facts are *not* part of Plaintiff's statement of material facts, and the exhibits Plaintiff cites are not also referenced in his statement of material facts. Plaintiff also separately filed an additional statement of material facts. (Doc. 246). The Court does not consider this separately filed statement of facts for two reasons. First, it was not filed with Plaintiff's motion for summary judgment and brief and, in fact, was filed almost two weeks later, on March 9, 2022. Second, to do so would contravene the guidelines set forth by this Court stating that "[t]he Court will not consider more than 50 numbered facts" without the movant first seeking and receiving leave of the Court to present more than 50 facts. (Doc. 191 at 2). In the statement of material facts Plaintiff files with his motion for summary judgment, (Doc. 236-4), Plaintiff already sets forth 143 facts, which

by itself is well over the limit, and the separately filed statement of facts adds 100 additional (though not entirely new) facts.[1]  (Doc. 246-1).[2]

Plaintiff's third motion for summary judgment, (Doc. 264), suffers from similar deficiencies. Again, Plaintiff includes a separate statement of material facts. *Id.* at 5–11. However, he fails to provide citations to any evidence. Instead, he generally cites to numerous cases, "public policy," and "Plaintiff notes and Recording." *Id.*[3]

---

[1] The Court notes that the facts set forth in Plaintiff's separately filed statement of facts, (Doc. 246-1), are largely identical to those filed in his third motion for summary judgment, though the third motion for summary judgment leaves out many of the facts asserted in Doc. 246-1. (*See* Doc. 264 at 5–11). And as the Court finds below with regard to those facts set forth in the third motion for summary judgment, these additional, separately filed facts do not properly cite to evidence. (*See* Doc. 246-1). This is yet another reason the Court does not consider them.

[2] Defendant filed a response to Plaintiff's second motion for summary judgment in which it notes that Plaintiff attempts to add additional Defendants and additional claims, and Defendant argues that the Court should not consider any claims against the additional Defendants and should not consider the new claims at all. (Doc. 250-1 at 7–8). In his reply brief, Plaintiff appears to concede the fact that Chase is the only Defendant. (Doc. 257 at 1). Though unnecessary given its recommendation that the second motion for summary judgment be denied, the Court simply notes that it does not consider Plaintiff's second motion for summary judgment to add any new Defendants or claims.

[3] Defendant argues that Plaintiff's third motion for summary judgment constitutes a supplemental brief that Plaintiff was not permitted to file without leave of the Court. (Doc. 272 at 2). Because the Court ultimately recommends

Plaintiff was put on notice of the applicable summary judgment requirements through the Court's summary judgment guidelines and its R&R on Plaintiff's first motion for summary judgment, which discussed the Local Rules. (Docs. 191, 202). However, Plaintiff again fails to set forth a statement of material facts that complies with the requirements of Local Rule 56(B)(1), and it is not the Court's responsibility to attempt to decipher the record or determine how each fact is supported by the record. *See Reese*, 527 F.3d at 1268. Therefore, the Court **RECOMMENDS** that Plaintiff's motions for summary judgment, (Docs. 236, 264), be **DENIED**.

The Court now takes up the two motions that Plaintiff filed that relate to his second motion for summary judgment, (Docs. 244, 245), and the two motions he filed that relate to his third motion for summary judgment, (Docs. 263, 266).

Plaintiff filed a motion for an extension of time for Defendant to respond to his second motion for summary judgment because he discovered that his undisputed material facts did not meet with the requirements of Local Rule 56.1(B)(1). (Doc. 244). Plaintiff maintains that he "acted quickly" after making this discovery to meet the requirements of the Local Rule and that Defendant need not

denying the third motion for summary judgment due to Plaintiff's failure to comply with the Local Rules, the Court does not address this alternative argument.

have responded to his motion for summary judgment until he met such requirements. *Id.* at 1. Plaintiff requests an extension of 13 days for Defendant to respond, *id.*, which corresponds with the number of days between when Plaintiff filed his motion for summary judgment and when he filed his additional statement of material facts. (Docs. 236, 246). This motion, therefore, seems to be an indirect request for an extension of time for Plaintiff to file his additional facts. However, because the Court does not consider the additional facts Plaintiff filed, (Doc. 246), his motion for extension of time, (Doc. 244), is **DENIED AS MOOT**.

Plaintiff also filed a motion under Federal Rule of Civil Procedure 15 for leave for Defendant to respond to Plaintiff's motion for summary judgment. (Doc. 245). Rule 15 provides for how a party may amend a pleading, and it seems that Plaintiff's motion is actually a motion for leave to amend his statement of material facts. *Id.* at 1 ("Justice so requires leave [for] Plaintiff to meet the requirements pursuant to Local Rule 56.1(B)(1)."). However, a statement of facts is not a pleading, and Rule 15, therefore, is inapplicable. Further, because the Court does not consider the additional facts Plaintiff filed, (Doc. 246), Plaintiff's motion for leave to amend, (Doc. 245), is **DENIED AS MOOT**.

Plaintiff also filed an emergency motion for an extension of time to file dispositive motions, (Doc. 263), and a motion for mailbox rule pursuant to Rule 5

of the Federal Rules of Civil Procedure, (Doc. 266). It is clear from Plaintiff's emergency motion for extension of time that Plaintiff believed that dispositive motions were due on May 5, 2022, and that he therefore required an extension of time to file his third motion for summary judgment on time. (Doc. 263 at 1). However, on May 5, 2022, the Court granted Defendant's motion for an extension of time to file dispositive motions, and it provided that both parties would have until May 26, 2022, to file dispositive motions. (Doc. 262). Because dispositive motions were due on May 26, 2022, and Plaintiff filed his third motion for summary judgment on May 9, 2022, (Doc. 264), the Court **DENIES AS MOOT** Plaintiff's emergency motion for extension of time to file dispositive motions, (Doc. 263).[4]

In his motion for mailbox rule, (Doc. 266), Plaintiff states that because he mailed his third motion for summary judgment on May 5, 2022, the docket should

---

[4] Within this motion, Plaintiff seems to incorporate a request for a settlement conference or mediation. (Doc. 263 at 3). However, only two weeks before Plaintiff filed the emergency motion for extension of time, the Court denied three of Plaintiff's motions seeking mediation or a settlement conference. (Doc. 259). The reasons for denying Plaintiff's motions for mediation set forth in Doc. 259 apply equally to the request for mediation or settlement conference in Plaintiff's emergency motion for extension of time. Accordingly, to the extent the emergency motion, (Doc. 263), is intended to include a renewed request for mediation, that request is **DENIED**.

11

be changed to reflect a filing date of May 5, 2022, rather than May 9, 2022. *Id.* at 1–2. However, as noted above, Plaintiff's motion for summary judgment was not due until May 26, 2022. Therefore, the difference between a docket entry reflecting a filing date of May 5 versus May 9 is immaterial, and Plaintiff's request that the docket be changed is **DENIED AS MOOT**. Within this motion, Plaintiff again seems to incorporate a request for a settlement conference or mediation. *Id.* at 4. For the reasons set forth in the Court's previous denial of Plaintiff's requests for mediation or a settlement conference, (Doc. 259), this renewed request is **DENIED**. Plaintiff also requests, within his mailbox rule motion, permission to file documents electronically and that he be appointed an attorney. (Doc. 266 at 4). First, the Local Rules of this Court do not permit *pro se* litigants to file documents electronically. Standing Order No. 19-01 states, "Pro se litigants who are not attorneys in good standing admitted to the Bar of this Court must file all documents with the Court in paper form." (Standing Order 19-01, *In re: Revised Electronic Case Filing Standing Order and Administrative Procedures*, Appendix H-3, NDGa). Accordingly, the request that Plaintiff be allowed to file documents electronically is **DENIED**.

As to Plaintiff's request to be appointed counsel, the Court may appoint an attorney to represent any party to a civil case who is unable to afford counsel. *See*

12

28 U.S.C. § 1915(e)(1). However, "[a] plaintiff in a civil case does not have a constitutional right to counsel, and the court should appoint counsel only in exceptional circumstances," *Rizo v. Ala. Dep't of Hum. Res.*, 228 F. App'x 832, 834 (11th Cir. 2007), "such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *McDaniels v. Lee*, 405 F. App'x 456, 457 (11th Cir. 2010) (internal quotation marks omitted); *see also Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) ("The key is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court."). Plaintiff summarily states that it is "undisputed" that he qualifies for court-appointed counsel because "[a] right to counsel is very important at this stage of litigation, in the public interest and public policy." (Doc. 266-1 at 12). The Court finds that, although Plaintiff demonstrated in his application to proceed *in forma pauperis* that he likely cannot afford an attorney, (Doc. 1), Plaintiff has not demonstrated exceptional circumstances such that court appointment of an attorney is warranted, and this request is **DENIED**.

Accordingly, Plaintiff's motion for mailbox rule, (Doc. 266), is **DENIED AS MOOT** as to his request for application of the mailbox rule and **DENIED** as to his requests for mediation, to be allowed to file documents electronically, and to be appointed counsel.

13

## III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Facts

#### 1.  *Standards for Presenting Facts at Summary Judgment*

Unless otherwise indicated, the Court draws the following facts from Defendant's Statement of Undisputed Material Facts. (Doc. 269-2). Additionally, as indicated and as needed, the Court draws some facts directly from the record. *See* Fed. R. Civ. P. 56(c)(3). ("The court need consider only the cited materials, but it may consider other materials in the record."). Plaintiff filed a response to Defendant's statement of material facts, but he failed to comply with the Local Rules in doing so.[5] (Doc. 279-3 at 20–22). The Local Rules state that the Court:

---

[5] Plaintiff filed two responses to Defendant's motion for summary judgment. (Docs. 278, 279). Local Rule 56.1(A) notes that parties "shall not be permitted to file supplemental briefs and materials, with the exception of a reply by the movant, except upon order of the Court." LR 56.1(A), NDGa. And here, Plaintiff filed a supplemental brief by filing a second response with "deficiencies corrected." (Doc. 279). However, this second response contains a numbered response to Defendant's statement of material facts and additional material facts that the initial response did not have, as well as a "memorandum of law." (*Compare* Doc. 279 *with* Doc. 278). Further, in its reply brief, Defendant considers the second response to be the "operative or definitive response," while still noting that Plaintiff was not necessarily permitted to file a second response. (Doc. 285 at 1–2). Both responses were also filed within 21 days of Defendant's motion for summary judgment, so there is no issue of timeliness. The Court, therefore, considers Doc. 279 as Plaintiff's response, but notes that doing so does not prejudice either party.

> will deem each of the movant's facts as admitted unless the
> respondent: (i) directly refutes the movant's fact with concise
> responses supported by specific citations to evidence . . . ; (ii) states a
> valid objection to the admissibility of the movant's fact; or (iii) points
> out that the movant's citation does not support the movant's fact or
> that the movant's fact is not material or otherwise has failed to comply
> with the provisions set out in LR 56.1(B)(1).

LR 56.1(B)(2)(a)(2), NDGa. Plaintiff provides a response to each numbered fact set

forth by Defendant. (Doc. 279-3 at 20–22). However, his response to each fact is

one of the following: "Deny and Inadmissible," "Deny and Inadmissible-Don't

recall," or "Admit and Inadmissible." *Id.* These responses do not contain specific

citations to evidence, nor does Plaintiff explain why the facts are inadmissible.

Although Plaintiff technically responded, he did not do so properly, and the Court

deems each of Defendant's facts admitted for the purposes of Defendant's motion

for summary judgment, where the proposed facts are material and supported by

a citation to admissible evidence in the record. *See* LR 56.1(B)(2)(a)(2); *see also Reese*,

527 F.3d at 1268 ("The proper course in applying Local Rule 56.1 at the summary

judgment stage is for a district court to disregard or ignore evidence relied on by

the respondent—but not cited in its response to the movant's statement of

undisputed facts—that yields facts contrary to those listed in the movant's

statement."). The Court has verified that Defendant's assertions of fact discussed

below are supported by the record citations Defendant provides in the statement of material facts.

The Court has excluded assertions of fact that are immaterial or presented as arguments or legal conclusions, as well as those assertions of fact unsupported by a citation to admissible evidence in the record or set forth only in Defendant's brief and not in the statement of facts. *See* LR 56.1(B)(1), NDGa. ("The Court will not consider any fact: (a) not supported by a citation to evidence . . . (c) stated as an issue or legal conclusion, or (d) set out only in the brief and not in the movant's statement of undisputed facts."). Nor has the Court considered the facts that Plaintiff sets forth only in his brief.

Critically, when it comes to the presentation and organization of the facts, Plaintiff did not abide by the Local Rules, which set forth several items that a respondent shall include when responding to a motion for summary judgment. The first, as noted above, is a response to the movant's statement of undisputed facts, (LR 56.1(B)(2)(a)(1)), which Plaintiff provided but which does not comport with the Local Rules. Second, a respondent shall provide a "statement of additional facts which the respondent contends are material and present a genuine issue for trial. Such separate statement of material facts must meet the requirements set out in LR 56.1(B)(1)." LR 56.1(B)(2)(b). This second filing is what

16

gives the non-moving party the opportunity to inform the Court of those facts that he contends *are* in dispute—and when he does so, the moving party (here, the Defendant) must then file a response to each of the non-movant's facts. LR 56.1(B)(3). Plaintiff filed a statement of additional material facts. (Doc. 279-1 at 1–3). However, he fails to cite to evidence in support of each of his facts, and therefore he does not meet the requirements set out in Local Rule 56.1(B)(1).

As noted above in addressing Plaintiff's motions for summary judgment, Local Rule 56.1 provides an orderly way for the parties to present and respond to the facts, and enforcing it is not a "form over substance" exercise. Indeed, both parties and the Court have a right to rely on the organization that the Local Rule provides, and when, as here, Plaintiff presents his facts without citation to evidence and fails to properly refute Defendant's facts, the orderly process breaks down. Even so, Defendant attempted to respond to Plaintiff's statement of additional facts, noting that each fact is unsupported by a citation to evidence. (Doc. 286).

As discussed above, Plaintiff's failure to provide a citation to evidence for each of his facts is enough for the Court to not consider them. Otherwise, the burden would fall on the Court to decipher the record to figure out which of those facts are relevant, material, and disputed. That is not the Court's role. *See Reese*,

527 F.3d at 1268 (noting that Local Rule 56.1 protects judicial resources by putting the burden on the parties to organize the evidence and focus the court's attention on what is, and what is not, genuinely controverted). As such, the facts below come from Defendant's statement of material facts and, when necessary, directly from the record evidence. That being said, the Court has viewed all of the evidence and factual inferences in the light most favorable to Plaintiff, as it is required to do on a defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993).

### 2.  *Material Facts*

On or about April 17, 2004, Washington Mutual Bank, FA (WaMu) extended Plaintiff a home equity line of credit with a credit limit of $172,800.00 (the loan), pursuant to an Agreement and Disclosure dated April 17, 2004. (Doc. 269-2 at ¶ 1). In conjunction with the loan, Plaintiff executed a security deed, also dated April 17, 2004, to secure the agreement, which was recorded on June 25, 2004. *Id.* at ¶ 2. The security deed granted to WaMu, as security, the real property described in the security deed: 3783 Walnut Creek Way, Lithonia, Georgia 30038. *Id.*; (Doc. 268-1 at ¶ 4). On September 25, 2008, the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver for WaMu, and it executed a Purchase and Assumption

Agreement with Defendant that transferred certain WaMu assets to Defendant, including Plaintiff's loan and related documents. (Doc. 269-2 at ¶ 3). On or about August 29, 2012, the FDIC assigned the security deed to Defendant, which was recorded on September 13, 2012. *Id.* at ¶ 4.[6] The security deed provides as follows:

> If [Plaintiff] does not pay any installment of the Debt or other amount due hereunder on time . . . the Debt and any other money whose repayment is secured by this Security [Deed] shall immediately become due and payable in full at the option of Lender and the total amount owed by [Plaintiff] shall thereafter bear interest at the rate(s) stated in the Credit Agreement. Lender may then invoke the power of sale contained in the Security [Deed] . . . .

*Id.* at ¶ 5; (Doc. 268-3 at 6–8). The loan is due for September 1, 2017, and the payments received and applied to the loan since its origination have brought it current only through August 31, 2017. (Doc. 269-2 at ¶¶ 6, 8). The loan has been in default since at least September 1, 2017. *Id.* at ¶ 9.

On February 24, 2017, Plaintiff filed a dispossessory case in Dekalb County Magistrate Court against Samantha Finley, seeking to evict her from and take possession of the subject property. *Id.* at ¶ 10. On or about April 3, 2017, that case was dismissed without prejudice. *Id.* at ¶ 11. About a month later, Plaintiff filed a

---

[6] The statement of fact says that the security deed was recorded on September 13, 2021. (Doc. 269-2 at ¶ 4). This appears to be a typo, as the exhibit itself makes clear that the assignment was filed and recorded on September 13, 2012. (Doc. 268-4 at 2).

new dispossessory case in Dekalb County Magistrate Court against Samantha and Rico Finley, seeking to evict them from and take possession of the subject property. *Id.* at ¶ 12. In documents filed by Plaintiff in that case, Plaintiff noted that he had to pay his mortgage and that, because the Finleys were not paying rent, he may lose his home. *Id.* at ¶ 13. On or about June 7, 2017, Plaintiff was granted a writ of possession. *Id.* at ¶ 14.

On or about August 4, 2018, Plaintiff, through counsel, filed a Chapter 13 bankruptcy petition in the United States District Court for the Northern District of Georgia. *Id.* at ¶ 18. He did not schedule the instant lawsuit as an asset of his estate. *Id.* at ¶ 19. Plaintiff's proposed Chapter 13 plan included payments to Defendant for arrearages on the loan calculated to be $12,103.31. *Id.* at ¶ 20. That case was dismissed on January 1, 2019, for failure to pay filing fees. *Id.* at ¶ 21.

### B. Discussion

#### 1. *Summary Judgment Standard*

Summary judgment is authorized when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.

*See Celotex Corp.*, 477 U.S. at 323; *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018).

The movant carries this burden by showing the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In making its determination, the court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *See Crane v. Lifemark Hosps., Inc.*, 898 F.3d 1130, 1134 (11th Cir. 2018).

Once the moving party has adequately supported its motion, the non-moving party must come forward with specific facts that demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party is required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-moving party's case is insufficient to defeat a motion for summary judgment; rather, there must be evidence on which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-moving party cannot defeat summary judgment by relying upon conclusory assertions. *Holifield v. Reno,* 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997). Rather, "[a] party asserting that a fact . . . is genuinely disputed must

21

support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Resol. Tr. Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) (*en banc*) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.").

If a fact is found to be material, the court must also consider the genuineness of the alleged factual dispute. *Anderson,* 477 U.S. at 249-50. A factual dispute is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Moreover, for factual issues to be genuine, they must have a real basis in the record. *Matsushita*, 475 U.S. at 587. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587 (internal quotation marks omitted). Thus, the standard for summary judgment mirrors that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at

259 (internal quotation marks omitted).

When considering motions for summary judgment, the court does not make

decisions as to the merits of disputed factual issues. *See id*. at 249; *Ryder Int'l Corp.*

*v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991). Rather, the court only

determines whether there are genuine issues of material fact to be tried. Applicable

substantive law identifies those facts that are material and those that are irrelevant.

*Anderson*, 477 U.S. at 248. Disputed facts that do not resolve or affect the outcome

of a suit will not preclude the entry of summary judgment. *Id.*

### 2. *Defendant's Arguments for Summary Judgment and Plaintiff's Responses*

Only one count remains from Plaintiff's amended complaint: his claim of

attempted wrongful foreclosure. (Doc. 84 at ¶¶ 19–21; *see* Doc. 171 at 27 (R&R on

a motion to dismiss recommending that Plaintiff's claim for attempted wrongful

foreclosure be permitted to proceed and that the other claims be dismissed); *see*

*also* Doc. 177 (adopting that R&R and dismissing all of Plaintiff's claims aside from

his attempted wrongful foreclosure claim)).

Defendant argues that Plaintiff cannot succeed on his claim for attempted

wrongful foreclosure because he was in default on his loan at all times that he

alleges Defendant advertised his property for foreclosure. (Doc. 269-1 at 10–11). Therefore, Defendant argues, any publication or advertisement stating that Plaintiff was in default would have been accurate. *Id.* at 10–13. Furthermore, Defendant argues, Plaintiff has not shown and cannot show causation or damages as a result of any alleged publication of untrue information. *Id.* at 14–16.

Plaintiff filed two responses, the second of which the Court considers, as discussed above. (Docs. 278, 279). As to the merits of the case, Plaintiff argues that he was not in default beginning in September of 2017 and that he cured the alleged default. (Doc. 279-3 at 23). He also argues that Defendant's actions were knowing and intentional. *Id.* at 25. Plaintiff's remaining arguments are procedural. He argues that the evidence offered by Defendant is inadmissible because he did not receive notice to respond to Defendant's summary judgment motion. *Id.* at 4, 7, 11–12. He also argues that the affidavit of Dorothy Washington, (Doc. 268-1), is inadmissible because Defendant did not provide an initial disclosure for Dorothy Washington and because she did not have personal knowledge of the loan, alleging that she was not present in Georgia at the time Plaintiff purchased his home and her name does not appear on any legal documents pertaining to the home. (Doc. 279-3 at 4–5, 17). Plaintiff also argues that the deposition Defendant

24

conducted was not in good faith and caused him emotional distress, such that he need not address it or the testimony arising from it. *Id.* at 22–23.

Defendant filed a reply, reiterating that Plaintiff cannot succeed on his attempted wrongful foreclosure claim because he was in default when he alleges Defendant advertised a foreclosure and Plaintiff never brought his loan current since his default in 2017. (Doc. 285 at 2). Defendant argues that Plaintiff has never stated with specificity what publications form the basis for his claim, how and when he made payments sufficient to make his loan current at the time of such publications, or how such publications caused him damages. *Id.* at 2–3. As to Plaintiff's procedural arguments, Defendant argues that the required notice of summary judgment was included in the service package Defendant sent to Plaintiff and that even if it had not been, Plaintiff was not prejudiced. *Id.* at 3–4. Next, Defendant argues that it is too late for Plaintiff to raise issues related to discovery, including those about his deposition and disclosure of evidence. *Id.* at 4. With regard to Plaintiff's argument about Washington's affidavit, Defendant argues that no specific notice was required because she was a corporate representative. *Id.*

### 3. *Procedural Issues*

Plaintiff argues that he did not receive notice to respond to Defendant's summary judgment motion. (Doc. 279-3 at 4, 7, 11–12). Defendant argues that it included the notice in the service package it mailed to Plaintiff. (Doc. 285 at 3). It is not evident from the docket that the "Notice to Respond to Summary Judgment Motion" form was included in what Defendant sent to Plaintiff. (*See* Doc. 269 (docket entry stating "please refer to http://www.gand.uscourts.gov to obtain the Notice to Respond to Summary Judgment Motion form contained on the Court's website")). However, from Plaintiff's reference to the notice it is clear that he was aware of the notice. He also previously filed motions for summary judgment where the docket entry referenced such notice. (*See* Docs. 264 and 236). Further, Plaintiff did, in fact, respond to Defendant's motion for summary judgment *twice*—the second response to "correct deficiencies" in the first. (Docs. 278, 279). Plaintiff had adequate notice of his need to respond to the motion for summary judgment, regardless of whether he received the notice form itself, and he was not prejudiced by any alleged failure to receive the form.[7]

---

[7] Plaintiff also seems to suggest that he did not receive the entirety of Defendant's motion for summary judgment or that the attached exhibits are in some way blank. (Doc. 279-3 at 17, 25). Plaintiff's allegations are not at all clear where, for example, he argues that "Plaintiff only have pages of 6 of 18 to respond

Plaintiff also argues that the affidavit of Dorothy Washington, (Doc. 268-1), is inadmissible because Defendant did not provide an initial disclosure for this witness and because she did not have personal knowledge of the loan, as she was not present in Georgia at the time Plaintiff purchased his home and her name does not appear on any legal documents pertaining to the home. (Doc. 279-3 at 4–5, 17). Plaintiff cites to Federal Rules of Civil Procedure 26(a) and (e) and 37(c) in support of his argument.

Under Rule 37(c),

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). Rule 26(a)(1)(A) provides:

Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing

---

to," *id.* at 25, and it is not obvious what relief he seeks now. The certificate of service makes clear that Defendant mailed Plaintiff a copy of the motion and attached exhibits. (Doc. 271). To the extent that Plaintiff was missing a page or had a copy of an exhibit that was blank, he should have immediately notified Defendant or the Court, in which case the problem (if there was one) would have been promptly addressed.

> party may use to support its claims or defenses, unless the use would be solely for impeachment; [and]
>
> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]

Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii). Additionally, Rule 26(e) provides that:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

Fed. R. Civ. P. 26(e)(1)(A).

A party's Rule 26(a) initial and supplemental disclosure duties include identifying individuals who are "likely to have discoverable information." Fed. R. Civ. P. 26 (a)(1)(A)(i). Rule 37(c) is a "'self-executing sanction for failure to make a disclosure'" and "is 'the more effective enforcement' mechanism of the disclosure requirement when 'the party required to make the disclosure would need the material to support its own contentions.'" *Barron v. Fed. Reserve Bank of Atlanta*, 129 F. App'x 512, 519 (11th Cir. 2005) (quoting Fed. R. Civ. P. 37, advisory committee's note (1993)).

28

District courts have differed on whether corporate witnesses must be identified under Rule 26. *Compare Moore v. Computer Assocs. Int'l, Inc.*, 653 F. Supp. 2d 955, 959-60 (D. Ariz. 2009) (denying the plaintiff's motion to strike the affidavit of an undisclosed witness after finding that the witness gave testimony that was "corporate in nature and could have been elicited from a number of Defendant's executives," such that Rule 26 disclosure was not required); *Garrett v. Trans Union, L.L.C.*, No. 2:04-CV-00582, 2006 WL 2850499, at *7 (S.D. Ohio Sept. 29, 2006) (allowing affidavit of corporate representative on summary judgment despite failure to specifically identify the witness); *with Geico Cas. Co. v. Beauford*, No. 8:05-CV-697-T-24EAJ, 2007 WL 2412953, at *5 (M.D. Fla. Aug. 21, 2007) (finding that "naming a general category such as 'corporate representative' is not a sufficient disclosure under Rule 26," and granting a motion in limine "to the extent that Geico has not disclosed the specific name of the witness that will testify as its corporate representative"); *Rogers v. Bank of Am., N.A.*, No. 13-1333-CM-TJJ, 2014 WL 4681031, at *6 (D. Kan. Sept. 19, 2014) ("[T]he Court finds that Defendant's mere identification of individuals not by name but by a generic label that could apply to a number of its employees, such as Defendant's 'corporate representative' or 'records custodian,' is not sufficient to satisfy its initial disclosure obligations under Rule 26(a)(1)(A)(i).").

However, the Eleventh Circuit has not yet decided whether Rule 26 requires corporate defendants to specifically identify witnesses who may simply testify regarding general corporate policies or documents. District courts within the Eleventh Circuit have noted that there is a split of authority on this issue. *See, e.g., Hayes v. Deluxe Mfg. Operations LLC*, No. 1:16-CV-02056-RWS-RGV, 2018 WL 1461690, at *3 (N.D. Ga. Jan. 9, 2018) (discussing that there is authority on both sides of the issue before determining that any failure to disclose corporate witnesses was substantially justified and harmless), *adopted by* 2018 WL 1869825 (N.D. Ga Feb. 21, 2018); *Hooks v. GEICO Gen. Ins. Co., Inc.*, No. 3:13-CV-891-J-34JBT, 2016 WL 5415134, at *8 (M.D. Fla. Sept. 28, 2016) (listing cases and finding that, even if GEICO failed to properly disclose a corporate representative under Rule 26, such failure was harmless), *aff'd sub nom. Hooks v. GEICO Gen. Ins. Co.*, 686 F. App'x 665 (11th Cir. 2017). The Court need not decide this issue, however, because it finds that Defendant's failure to identify Washington was substantially justified and harmless.

A party's "discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (internal quotation marks omitted). A "failure

to disclose is harmless when there is no prejudice to the party entitled to receive the disclosure." *Hammonds v. Jackson*, No. 1:13-CV-711-MHS-WEJ, 2015 WL 12867065, at *3 (N.D. Ga. Mar. 16, 2015) (internal quotation marks omitted), *adopted by* 2015 WL 12866453 (N.D. Ga. May 18, 2015), *aff'd* 628 F. App'x 716 (11th Cir. 2016). As discussed above, there is authority on both sides of the issue of whether a corporate defendant must identify corporate representatives who will provide general testimony regarding corporate policies and documents, and thus, the parties reasonably could differ as to whether Defendant complied with its disclosure obligations. *See Devaney*, 989 F.2d at 1163; *Reese v. CSX Transp., Inc.*, No. CV 118-215, 2020 WL 5740253, at *21–22 (S.D. Ga. Sept. 24, 2020) (holding that "whether a party is required to disclose a corporate representative in its initial disclosures is not entirely clear" and finding that the asserted nondisclosure was substantially justified). Indeed, "[t]he [substantial justification] test is satisfied if there is a[] genuine dispute concerning compliance," although "[t]he proponent's position must have a reasonable basis in law and fact." *Insect Sci. Res., LLC v. Timberline Fisheries Corp.*, No. 1:07-CV-2662-JEC-AJB, 2008 WL 11333460, at *12 (N.D. Ga Nov. 30, 2008). Here, Defendant's conduct was substantially justified because there is a clear dispute as to Defendant's disclosure obligations for a corporate-representative witness like Washington.

Moreover, Defendant's failure to disclose Washington is harmless. "District courts have broad discretion to determine whether a violation of Rule 26(a)(2) is harmless." *Brantley v. Ferrell Elec., Inc.*, 112 F. Supp. 3d 1348, 1358 (S.D. Ga. 2015). In deciding whether a failure to disclose is harmless under Rule 37(c), courts consider: (1) the importance of the evidence, (2) the reasons for the failure to disclose, and (3) the prejudice to the opposing party if the evidence is considered. *See Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005). Other relevant considerations include whether the undisclosed evidence was a surprise to the opposing party, whether the non-disclosing party acted in bad faith, whether the party seeking exclusion suffered prejudice, and whether the prejudice can be cured. *See, e.g., Vitola v. Paramount Automated Food Servs., Inc.*, No. 08-61849-CIV, 2009 WL 5067658, at *1 (S.D. Fla. Dec. 17, 2009) ("The following factors should guide the court in determining whether to exclude evidence pursuant to Rule 37(c)(1): (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.") (internal quotation marks omitted); *Blackledge v. Ala. Dep't of Mental Health & Mental Retardation*, No. 2:06cv321-ID, 2007 WL 3124452, at *12 (M.D. Ala. Oct. 25, 2007) (listing "whether the concealing party

32

acted in bad faith, whether the party seeking exclusion of undisclosed evidence suffered prejudice, and whether the prejudice, if any, can be cured" as items to consider under Rule 37 (footnote omitted)).

The Court finds that any surprise to Plaintiff from Washington's declaration is, at best, marginal. Washington's affidavit does not bring forth new, material information. Rather, it largely summarizes business records consisting of the agreement, security deed, and loan relating to Plaintiff's property, as well as court proceedings and filings. (Doc. 268-1). Indeed, Ms. Washington states that her personal knowledge comes from reviewing Chase's business records and public filings. *Id.* at ¶ 2. Therefore, the Court also finds that the affidavit is not prejudicial, as it does not present evidence that is not otherwise available in the record. And to the extent that the affidavit opines on any of that information, the Court does not find that any such opinions are material to the facts in the case. The Court discerns no bad faith or willfulness and the affidavit is, therefore, admissible.

### 4. *Attempted Wrongful Foreclosure Claim*

"An attempted wrongful foreclosure claim exists when, in the course of a foreclosure action that was not completed, a defendant makes a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and damages were sustained as a direct result of the

publication." *Sparra v. Deutsche Bank Nat'l Tr. Co.*, 785 S.E. 2d 78, 83 (Ga. Ct. App. 2016) (internal quotation marks omitted). The parties do not dispute the fact that, as of September 1, 2017, Plaintiff was in default on his loan. (Doc. 269-2 at ¶ 9). And neither party has offered facts to suggest that Defendant either knowingly or intentionally published untrue information, or that Defendant published untrue information at all. Defendant notes that the only potential publications at issue in this case are one from August 7, 2018, alleged in Plaintiff's amended complaint (though it does not appear that any evidence has been offered in support of this contention), and one from March of 2019 (which is in an exhibit attached to Plaintiff's earlier motion for entry of default or default judgment and which Defendant asserts is unauthenticated). (Doc 269-1 at 10–11 (citing Doc. 84 at ¶ 17; Doc. 156-2 at 5)).

Plaintiff's failure to cite to evidence relating to these alleged publications or advertisements in either his response to Defendant's statement of material facts or in his own additional material facts, or to even attach evidence to those filings, places the burden on the Court and on Defendant to try and find where in the record these exhibits may be—if they are there at all. And, as discussed above, this is not the Court's role, nor is it an appropriate use of judicial resources. *See Reese*, 527 F.3d at 1268. However, even if these alleged dates were the dates upon which

publications were made, the earliest one—in August of 2018—would have been published almost a year after Plaintiff defaulted on his loan. A notation in a publication that Plaintiff was in default would, therefore, not have been untrue.[8] *See Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1134 (11th Cir. 2014) (holding that the defendant was entitled to summary judgment on the plaintiff's attempted wrongful foreclosure claim because the information published—that plaintiff failed "to pay the indebtedness as and when due and in the manner provided in the Note and Deed to Secure Debt" and that "the debt remains in default"—was true where the plaintiff was admittedly in default on the loan); *Phillips v. Ocwen Loan Servicing, LLC*, 92 F. Supp. 3d 1255, 1266–67 (N.D. Ga. Mar. 12, 2015) (holding that the published statement that the plaintiff's debt was due because of "failure to pay the indebtedness" when due and in the manner provided in the note and security deed, was not untrue or derogatory where the plaintiff admitted that he failed to make payments when due). Simply put, because Plaintiff was in default on the loan, it would not have been untrue for Defendant to publish that he was in default.

---

[8] Plaintiff has not identified any other component of the alleged publications—other than that he was in default—that he maintains is untrue.

Plaintiff has also failed to demonstrate that he is entitled to damages as a result of any such publication. A "[f]ailure to make the proper loan payments or tender the amount due defeats any wrongful foreclosure or attempted wrongful foreclosure claims." *White v. Bank of Am., N.A.*, No. 1:12-cv-3834-WSD, 2013 WL 1963786, at *3 n.11 (N.D. Ga. May 10, 2013); *see also Ezuruike v. Bank of New York Mellon*, No. 1:11-cv-4030-JEC, 2012 WL 3989961, at *2 (N.D. Ga. Sept. 11, 2012) (holding that, where the plaintiff made no plausible allegation at the motion to dismiss stage that he was not in default, a foreclosure notice suggesting that he was in default "could not falsely impugn [his] financial condition"); *Sellers v. Bank of Am., Nat'l Ass'n*, No. 1:11-CV-3955-RWS, 2012 WL 1853005, at *3 (N.D. Ga. May 21, 2012) (dismissing a claim for wrongful attempted foreclosure where the plaintiffs failed to allege that the defendants knowingly published untrue and derogatory information or that the plaintiffs were damaged). Here, Plaintiff alleges that, "[a]s a result of Defendant publishing untrue and derogatory information concerning Plaintiff, Plaintiff was forced to incur expenses to file bankruptcy to avoid wrongful foreclosure." (Doc. 84 at ¶ 21). Plaintiff filed his bankruptcy petition "on or about August 4, 2018"—almost a year after he was in default. (Doc. 269-2 at ¶ 18). However, as discussed, Defendant did not publish untrue or derogatory information—Plaintiff does not dispute that he was in

default and therefore does not dispute that any published information indicating that he was in default was true. Accordingly, any damages that Plaintiff alleges he incurred were a result of his own default, not a result of any act by Defendant.

Throughout his response, Plaintiff asserts that the Escalation Manager for Defendant, Glenda Gollwitzer, told him that four payments (amounting to $600) had been misapplied and not credited to his account. (*See, e.g.,* Doc. 279-3 at 3, 13, 17–20). However, this argument alone cannot preclude summary judgment. First, at no point does Plaintiff cite to record evidence supporting this alleged fact. Second, Plaintiff does not assert that, but for this misapplication of payments, he would not have been in default on his loan as of September 1, 2017. Though he alleges in his amended complaint that this misapplication of payments took place between June and September of 2017, (Doc. 84 at ¶ 15), he does not support this assertion with evidence or a citation to evidence. Furthermore, Plaintiff does not dispute that he was in default on his loan as of September 1, 2017, or explain how he would not have been in default even if those four payments, amounting to $600, were applied properly, given that there remains over $100,000 in principal and over $75,000 in deferred principal due as of May 24, 2022. (Doc. 269-2 at ¶ 6). As Defendant properly argues, (Doc. 269-1 at 12–13), even if those four payments

were applied correctly, Plaintiff would still be in default for failing to make every payment that came due after September of 2017.

Accordingly, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment, (Doc. 269), be **GRANTED**.

## IV.    OTHER MISCELLANEOUS MOTIONS

The Court will now consider Plaintiff's remaining motions.

### A. Plaintiff's Motions to Disqualify and Ban Defendant's Counsel

Plaintiff has filed related motions to disqualify Defendant's counsel, (Doc. 274), and to "ban Chase debt collection attorney and debt collection agency," (Doc. 275). In the first motion, Plaintiff moves to disqualify Chase's counsel, alleging that Defendant's counsel acted unethically, disobeyed orders, "kept silent and did not disclose he was a full time 'Debt Collector,'" and generally did not act in good faith. (Doc. 274 at 1). He cites to "Canon 9" of the American Bar Association (ABA) Code of Professional Responsibility. *Id*. at 2. Plaintiff sets out the following examples of "extreme and outrageous" conduct (among others), alleging that Defendant's counsel:

1) called Plaintiff several times "and never disclosed he was a debt collector attempting to collect an allege[d] debt indirectly";

2) slammed the phone down during one of his phone calls with Plaintiff, which hurt Plaintiff's ear because it was so loud;

38

3) "admitted to the Court statements that Plaintiff never made which is a material misrepresentation";

4) did not meet to confer in person with Plaintiff;

5) misrepresented that settlement negotiations were ongoing after missing the deadline to timely answer;

6) deposed Plaintiff despite Plaintiff's objection to being deposed, threatened to call the Court during Plaintiff's deposition, and "got really aggressive";

7) participated in a settlement conference with Plaintiff without a Chase representative;

8) "received proof of payment and a cease and desist letter and continue to attempt to collect an allege[d] debt that was paid in full"; and

9) "has not been truthful during this entire litigation and breached his ethical duties to collect an allege[d] debt from Plaintiff."

(Doc. 274-4 at 1, 4–5). Defendant filed a response opposing the motion. (Doc. 280). In the second motion, Plaintiff argues that Defendant's counsel is a "full time debt collector and debt collection agency" and participated with Defendant to attempt to collect a debt from Plaintiff in violation of the Fair Debt Collection Practices Act (FDCPA) and other laws. (Doc. 275 at 2).

"The party bringing the motion to disqualify bears the burden of proving the grounds for disqualification." *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006). Because a party is "presumptively entitled to the counsel of

39

his choice," a court may disqualify a party's chosen counsel "only if compelling reasons exist." *Id.* (internal quotation marks omitted). "A disqualification order is a harsh sanction, often working substantial hardship on the client and should therefore be resorted to sparingly." *Id.* (internal quotation marks omitted); *see also, e.g., City of Jacksonville v. Mun. Elec. Auth. of Ga.*, No. 1:19-CV-3234-MHC, 2019 WL 7819485, at *3 (N.D. Ga. Nov. 7, 2019) (finding that because they impose hardship on the litigant, cause delay, inconvenience clients, and cause significant expense, "motions to disqualify are viewed with disfavor as an extraordinary remedy that should not be granted unless absolutely necessary" (internal quotation marks omitted)).

As an initial matter, the ABA Code of Professional Responsibility cited by Plaintiff has been replaced by the ABA Model Rules of Professional Conduct.[9] However, Canon 9 of the former ABA Code of Professional Responsibility stated "that '[a] lawyer should avoid even the appearance of professional impropriety.'" *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988) (quoting Canon 9; alteration in original). Under Canon 9, a lawyer "may be disqualified if the court

---

[9] See the ABA website, https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/ (last visited August 22, 2022).

finds (1) some specifically identifiable appearance of improper conduct and (2) that the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in a particular case." *Id.* (internal quotation marks omitted). The Court finds that Plaintiff has not carried his burden to prove that Defendant's counsel should be disqualified (or "banned") based on Canon 9 or otherwise.

First, Plaintiff's numbered points 1, 8, and 9 in Doc. 274 and his motion to ban in Doc. 275 are based on allegations that Defendant's counsel has somehow violated the FDCPA or other laws by interacting with Plaintiff without disclosing their status as a debt collector attempting to collect a debt. (*See* Doc. 274-4 at 4–5; Doc. 275-1 at 9–10 (alleging that Defendant's counsel William O. Tate and his firm have extensive experience in foreclosure law as described on their website yet sent Plaintiff letters and emails without stating that Tate and the law firm were debt collectors). Plaintiff does not explain how Defendant's counsel was acting as a debt collector in the course of this lawsuit or how they attempted to collect a debt through their defense of Chase in this lawsuit. Plaintiff attaches two emails from Defendant's counsel that include a boilerplate disclaimer that: "Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose."

41

(Doc. 274-1 at 32–33). However, these emails do not show attempts to collect a debt from Plaintiff. *See id*. But perhaps even more significantly, there are no FDCPA claims in this case, which makes Plaintiff's allegations irrelevant.

As to Plaintiff's numbered points 2 through 7, (Doc. 274-4 at 4), Plaintiff does not support his allegations with evidence or sufficient detail to allow the Court to determine that Defendant's counsel acted improperly. To the extent Defendant's counsel did slam down a phone during a conversation with Plaintiff, such an action would not warrant disqualification. In the remaining numbered points, Plaintiff refers to unspecified statements that he alleges Defendant's counsel misrepresented, unspecified Court orders that he claims Defendant's counsel did not obey, and unspecified settlement conferences that were not held according to the proper rules.[10] *Id*. Plaintiff does not specify the alleged misrepresentations and improper actions or when they were made. Plaintiff's claims that Defendant's counsel deposed him over his objection[11] and that Defendant's counsel stated that he was going to call the undersigned during the deposition also do not constitute

---

[10] The Court has addressed Plaintiff's complaint about the Rule 26(f) conference multiple times. (Doc. 171 at 23).

[11] The Court notes that it previously denied Plaintiff's motion to terminate his deposition, (Doc. 224), and granted Defendant additional time to depose Plaintiff. (Doc. 233).

42

"compelling reasons" to disqualify Defendant's counsel. *Herrmann*, 199 F. App'x at 752.

Simply put, Plaintiff comes nowhere close to meeting his burden and demonstrating that the "harsh sanction" of disqualification is warranted in this case. *Herrmann*, 199 F. App'x at 752. Plaintiff's motion to disqualify Chase's counsel, (Doc. 274), and motion to "ban Chase debt collection attorney and debt collection agency," (Doc. 275), are **DENIED**.

### B. Plaintiff's Motion to Show Cause and Motion to Strike

On June 28, 2022, well after discovery had closed in this case and the dispositive motions deadline of May 26, 2022 had passed, Plaintiff filed a "motion to show cause," consisting of 20 numbered points about which he "is requesting Defendant to show proof." (Doc. 282). Plaintiff cites to no authority allowing him to file such a motion or requiring Defendant to "show proof" in response. Accordingly, Plaintiff's motion to show cause, (Doc. 282), is improper and is **DENIED**.

On August 3, 2022, Plaintiff filed a "motion to strike Defendant's motions," in which he seeks to strike Defendant's pending motions. (Doc. 298). Plaintiff emphasizes that Defendant's counsel "admitted" that "I only know the same facts you do," and Plaintiff cites this fact at least five times in his motion as evidence

that Defendant has pursued frivolous theories and has no meritorious defense. *See id*. at 1 (citing to Doc. 293-1 at 47), 2–4. The Court admits to being perplexed by Plaintiff's motion. Defendant's counsel's statement that "I only know the same facts you do," was made in a February 8, 2022, email to Plaintiff regarding Plaintiff's responses to Defendant's discovery requests. The Court quotes the relevant paragraph here:

> With respect to deposing me, I am Chase's attorney in this case so there is very little I could testify to that would not be protected by attorney/client privilege and certainly nothing relevant to your remaining claim of attempted wrongful foreclosure- I didn't work on the foreclosure, I only know the same facts you do. I suspect, based on you bringing it up so often, that your questions to me have to do with "debt collection." This is something I strongly believe would be better to talk out than send emails back and forth on. **Consequently, if you would like to go over the type of information or answers you are looking for from me, I am happy to have a call or video call and you are welcome to record that call if you like. However, if you prefer email I am still willing to look at whatever you want to ask me via email. Just let me know if you send them that this is what they are in response to.**

(Doc. 293-1 at 47 (emphasis in original)). The clear context of this statement is Defendant's counsel's belief that there is no reason for Plaintiff to depose him, as he is Defendant's attorney and did not work on the foreclosure at issue and thus does not have personal knowledge of any facts related to the foreclosure. Plaintiff seems to think that this statement by Defendant's counsel admits to something

that undermines Defendant's defenses in this case and means Defendant's filings contained "frivolous theories . . . [with] absolutely no chance of success." (Doc. 298 at 4). However, Plaintiff does not explain why this statement warrants striking any of Defendant's pending motions or how Defendant's counsel's statement is relevant in any way. Nor does he offer any other valid reasons for striking any of the various documents. Accordingly, Plaintiff's "motion to strike Defendant's motions," (Doc. 298), is **DENIED**.

### C.  Plaintiff's Motions for Unopposed Motions

Plaintiff has filed two motions "for unopposed motions." (Docs. 283, 295). In the first, Plaintiff seeks to have the following four motions granted as unopposed due to Defendant not having timely responded: (1) Plaintiff's emergency motion for extension of time to file dispositive motion, (Doc. 263); (2) Plaintiff's motion for mailbox rule, (Doc. 266); (3) Plaintiff's motion to ban Chase's debt collection attorney and debt collection agency, (Doc. 275); and (4) Plaintiff's notice of filing a cease and desist letter, (Doc. 276). (Doc. 283-1 at 2–3). In the second motion, Plaintiff seeks to have his motion for order to show cause, (Doc. 282), granted as unopposed due to Defendant not having timely responded. (Doc. 295 at 1).

The Court cannot grant Doc. 276 as unopposed because it is not a motion, but rather Plaintiff's filing of the cease-and-desist letter that he sent to Defendant's counsel. For the other four motions, the Court declines to grant them as unopposed. Although Plaintiff is correct that Defendant did not directly respond to the motions, the Court may deny an unopposed motion after consideration of the merits. *See United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (holding that the district court cannot grant a motion for summary judgment "on the mere fact that the motion was unopposed"). As discussed above, Plaintiff does not prevail on the merits of the four motions at issue, (Docs. 263, 266, 275, 282), or they are in part moot, and the motions are not due to be granted simply because Defendant did not respond. Accordingly, Plaintiff's motions for unopposed motions, (Docs. 283, 295), are **DENIED**.

### D. Plaintiff's Motions for Sanctions

On July 11, 2022, Plaintiff filed two motions for sanctions under Federal Rule of Civil Procedure 37, as well as various other of the Federal Rules of Civil Procedure, this Court's Local Rules, and Georgia law. (Docs. 290, 291). The motions allege that Defendant failed to perform an unspecified "legal duty" during discovery, (Doc. 290 at 1), and "willfully refused to cooperate and willfully

refused to obey a lawful court order during discovery." (Doc. 291 at 1). It appears that Plaintiff's motions for sanctions arise out of Defendant's alleged failure to have certain current or former employees be deposed, despite Plaintiff serving notice, (Doc. 290 at 4–5, 10–11; Doc. 291 at 2; Doc. 291-2 at 1–2; Doc. 291-4 at 15–17); Defendant's alleged failure to confer in person with Plaintiff, (Doc. 291-2 at 3; Doc. 291-4 at 2); Defendant's alleged failure to have a Chase representative at a settlement conference, (Doc. 291-2 at 3; Doc. 291-4 at 2); and Defendant's alleged failure to respond to Plaintiff's written discovery requests in good faith, (Doc. 291-2 at 3–4; Doc. 291-4 at 2). Plaintiff also alleges in his second motion that Defendant failed to comply with the Court's pretrial instructions, (Doc. 291 at 3), although he does not specify what pretrial instructions were issued that Defendant failed to obey. Plaintiff seeks a default judgment and monetary damages as sanctions. (Doc. 291 at 3). Defendant filed a response opposing Plaintiff's motions for sanctions, arguing that there is no factual basis for sanctions and that sanctions are not warranted under the relevant law. (Doc. 293). Plaintiff filed a reply brief, (Doc. 296), and a supporting affidavit, (Doc. 297).

The misconduct Plaintiff alleges in his motions for sanctions relates to discovery matters. Plaintiff filed his motions for sanctions on July 11, 2022—well after discovery had closed in this case and over six weeks after the dispositive

motions deadline of May 26, 2022, had passed (and after Plaintiff filed his second and third motions for summary judgment). (*See* Docs. 290, 291). Further, Plaintiff did not file a motion to compel (or, even easier, request a telephone conference with the undersigned, as the scheduling order explicitly encourages, (Doc. 190 at 3)), related to the alleged discovery violations at issue during the discovery period or seek to extend discovery on the basis of Defendant's alleged violations.[12] Indeed, the undersigned has had several conferences with the parties, (Docs. 178, 205, 233), and discussed some of the issues Plaintiff raises—including how to properly notice a deposition. If Plaintiff had subsequent concerns about how discovery was proceeding, he could have requested another conference while discovery was still open, and the Court would have addressed those concerns. Instead, the focus of Plaintiffs' motions to compel:

> is to seek punishment for a variety of developments and circumstances that took place in the extended course of discovery in this case. This emphasis seems to misapprehend the intended functioning of pretrial practice. The purpose of the discovery rules is to facilitate resolution of cases on their merits with what is supposed

---

[12] The Court notes that Plaintiff filed a motion to compel discovery on May 13, 2019, (Doc. 37), which the Court denied because Plaintiff's motion did not set forth what discovery he sought or what Defendant's objections were to the discovery, (Doc. 54 at 4–6). On February 12, 2021, Plaintiff filed three motions to compel Defendant to respond to his written discovery requests, (Docs. 131, 132, 134), which the Court denied because discovery had not yet opened in this case when the motions to compel were filed, (Doc. 171 at 21).

> to be an efficient self-executing or self-policed exchange of relevant information. Creating of satellite litigations or opportunities for seeking sanctions is not a goal of the process.

*Swofford v. Eslinger*, No. 6:08-cv-66-Orl-35DAB, 2009 WL 1025223, at *1 (M.D. Fla. Apr. 14, 2009) (denying a motion for sanctions filed after discovery had closed without the filing of a prior motion to compel).

The Court concludes that sanctions are not warranted in this case because, to the extent that there were discovery issues or problems, they could and should have been raised and addressed during discovery. *See, e.g., Williams v. Ala. Dep't of Indus. Relations*, 684 F. App'x 888, 895 (11th Cir. 2017) (district court did not abuse its discretion in denying a motion for sanctions under Rule 37 where the court had not previously entered any order requiring a party to provide or permit discovery); *Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 370–71 (11th Cir. 2009) (holding that the district court did not abuse its discretion in declining to impose sanctions related to discovery violations where the party seeking sanctions "could have filed a motion to compel that would have enabled the district court to address the problems of which he complained. Instead, he waited and filed a motion for sanctions, contributing to the problem."); *United States v. Certain Real Prop. Located At Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317–18 (11th Cir. 1997) (holding that the district court abused its discretion by entering default judgment as a sanction

under Rule 37 "notwithstanding the fact that no discovery order compelling the claimants to produce the requested discovery had issued . . . [and the party seeking sanctions] had not filed a motion to compel prior to requesting sanctions"); *see also Kendall Lakes Towers Condo. Ass'n, Inc. v. Pacific Ins. Co., Ltd.*, No. 10-24310-CIV, 2011 WL 6190160, at *3 (S.D. Fla. Dec. 2, 2011) ("At bottom, the motion [for sanctions] must be denied because the . . . discovery conduct in this case falls well short of the bad-faith conduct needed to sustain a sanction as severe as dismissal. [The party moving for sanctions] could have obtained less-drastic relief in many instances had it timely raised its objections with . . . [the] discovery responses and disclosure obligations."). Accordingly, Plaintiff's motions for sanctions, (Docs. 290, 291), are **DENIED**.

## V.   CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's second motion for summary judgment, (Doc. 236), and third motion for summary judgment, (Doc. 264), be **DENIED**. The undersigned further **RECOMMENDS** that Defendant's motion for summary judgment, (Doc. 269), be **GRANTED**.

Plaintiff's motion for extension of time, (Doc. 244), is **DENIED AS MOOT**, and his motion for leave for Defendant to respond, (Doc. 245), is **DENIED AS MOOT**.

Plaintiff's emergency motion for extension of time, (Doc. 263), and his motion for mailbox rule, (Doc. 266), are **DENIED IN PART AND DENIED AS MOOT IN PART**.

Plaintiff's motions to disqualify Defendant's counsel and ban Defendant's counsel, (Docs. 274, 275), are **DENIED**; his motion for order to show cause, (Doc. 282), is **DENIED**; his motions for unopposed motions, (Docs. 283, 295), are **DENIED**; his motions for sanctions, (Docs. 290, 291), are **DENIED**; and his motion to strike Defendant, (Doc. 298), is **DENIED**.

There are no other pending motions in this matter, and the Clerk is **DIRECTED** to terminate the reference to the undersigned.

**IT IS SO ORDERED AND RECOMMENDED**, this 22nd day of August, 2022.

_____
CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE